

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOSEPH MCGEENEY<br>1315 Washington Irving Lane<br>Middle River, Maryland 21220<br><br>Plaintiff<br><br>v.<br><br>GENERAL MOTORS, LLC<br>300 Renaissance Center<br>Detroit, Michigan 48265<br><br><u>Serve On: Registered Agent</u><br>CSC—Lawyers Incorporating Serv. Co.<br>7 St. Paul Street, Suite 820<br>Baltimore, Maryland 21202<br><br>Defendant | Civil Case No. **GLR 16 CV 2364** |

## COMPLAINT

Plaintiff, Joseph McGeeney, acting on his own behalf as a pro se litigant, hereby files this Complaint and sues Defendant, General Motors, LLC. In support of his Complaint, Plaintiff states and avers as follows:

### Introduction

1. From 2000 to 2014, General Motors sold millions of vehicles in Maryland and throughout the United States with defective and unreasonably dangerous ignition switches. The switches were designed and manufactured with unreasonably flimsy and weak detent plungers that allowed their ignitions to inadvertently move out of the "run" position, shutting-off their vehicles' engines and electrical systems and disabling their

airbag systems. The defective ignition switches not only increased the risk of having crashes, they also increased the risk that non-injury and low-injury crashes would result in serious injuries or death.

2. As outlined in more detail below, General Motors designed, manufactured, distributed, and marketed a 2008 Pontiac Grand Prix (VIN 2G2WP552881168213) with one of its defective and unreasonably dangerous ignition switches and then sold it to Joseph McGeeney.

3. In 2013, Mr. McGeeney was driving his Pontiac Grand Prix when he had to brake to avoid a car that stopped abruptly in front of him. The faulty ignition switch inadvertently moved out of the "run" position and turned Mr. McGeeney's vehicle off. His vehicle was struck from behind by another vehicle and pushed into the vehicle in front of him. If the ignition switch had still been in the "run" position, Mr. McGeeney's driver's side airbag would have deployed in the frontal crash and he would not have suffered any injury, much less a permanently disabling injury. Because Mr. McGeeney's vehicle had a defective ignition switch, however, his airbag failed to deploy and his head, neck, and back were forced through an abnormal range of motion, causing him to suffer serious, permanent, and disabling injury.

4. If General Motors had just designed, manufactured, assembled, distributed, and sold the 2008 Pontiac Grand Prix to Mr. McGeeney in a defective and unreasonably dangerous condition, it would have been bad enough. What makes it worse is that General Motors had known for years that many of its ignition switches were defective

and unreasonably dangerous. It had received crash reports, conducted internal investigations, and had internal discussions about the issue.

5. Despite knowing that it was putting its customers and the general public at risk, General Motors chose not to design or use different, safer ignition switches, recall or repair vehicles already on the market with defective ignition switches, or even warn its customers of the danger they were in post-sale. Instead, General Motors made a conscious, calculated decision to continue marketing and selling new cars with defective and unreasonably dangerous ignition switches to customers, including Mr. McGeeney.

6. In this case, Mr. McGeeney seeks to hold General Motors responsible for the all too real consequences of its decisions and actions.

## Parties, Jurisdiction, and Venue

7. Plaintiff, Joseph McGeeney, is a resident and citizen of the State of Maryland. At all times relevant to this cause of action, he lived at 1315 Washington Irving Lane, Middle River, Maryland 21220.

8. Defendant, General Motors, LLC, is a corporation created and existing under the laws of the State of Delaware with a principal place of business in Detroit, Michigan. When the predecessor General Motors went into bankruptcy, General Motors was created and assumed most of its assets and liabilities. As part of this process, General Motors assumed liability for defects in existing product lines and assumed all responsibility for complying with "the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Act, the Transportation Recall Enhancement,


Accountability and Documentation Act, [and] the Clean Air Act . . . and similar laws." General Motors also assumed liability for post-sale accidents involving personal injury.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 (Seventy-Five Thousand Dollars), exclusive of interest and costs, and is between citizens of different States.

10. This Court has personal jurisdiction over this action. At all times relevant to this cause of action, General Motors engaged in a active, continuous, and persistent course of conduct that resulted in continuous and systematic contacts with Maryland and consumers here, and maintenance of this action does not offend traditional notions of fair play and substantial justice. General Motors targeted Maryland consumers through advertisements, promotions, and other marketing efforts; sold vehicles, accessories, and services to Maryland consumers through its dealerships; communicated directly with potential, existing, and former Maryland customers using a variety of methods; and was otherwise actively, continuously, and persistently involved in performing various business functions in Maryland. General Motors registered to do business in Maryland and maintained an agent for service of process here. It negotiated and entered into contracts in Maryland and engaged in an active, persistent, and continuous course of conduct under those contracts. In addition to releasing vehicles it knew had defective and unreasonably dangerous ignition switches into the stream of commerce knowing that they would be used throughout the United States, General Motors also actively, continuously, and persistently targeted Maryland for the distribution and sale of these vehicles. General

Motors derives substantial revenue from goods and products used in Maryland. And, as a result of General Motors' actions, caused the tortious injury at issue in this case in Maryland.

11. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to this action occurred and General Motors transacted and continues to transact business here.

## Common Allegations of Fact

12. General Motors designed, manufactured, distributed, and marketed the 2008 Pontiac Grand Prix (VIN 2G2WP552881168213) at issue in this case and sold it to Joseph McGeeney.

13. The ignition switch in Mr. McGeeney's 2008 Pontiac Grand Prix was defective and unreasonably dangerous. The ignition switch used a subcomponent known as a "switch detent plunger" to resist forces that could cause inadvertent movement of the ignition switch. As designed and manufactured, however, the switch detent plunger in Mr. McGeeney's vehicle – and over two million other vehicles – failed to meet General Motors' internal specifications. It was too flimsy and weak to adequately resist the forces exerted on it in foreseeable, real world driving conditions. The ignition switch also contained other design issues – weakness, low positioning, and others – that caused it to be unable to resist downward forces imparted by keys in the ignition. In these circumstances, the ignition switch could move out of the "run" position shutting off their vehicles' engines and electrical systems and disabling its airbags. This not only increased

the risk of having a crash, it also increased the risk that an otherwise non-injury or low-injury crashes would result in serious injury or death.

14. General Motors knew or should have known for years that the ignition switch it incorporated into Mr. McGeeney's 2008 Pontiac Grand Prix was defective and unreasonably dangerous. In 2004, General Motors began receiving reports that its vehicles were stalling or inadvertently turning off while being driven. Customer complaints and warranty claims began being made. In 2005, a General Motors engineer experienced an ignition switch malfunction while traveling on an uneven gravel road. In an email she explained that her key moved out of the "run" position and her car lost power. She also explained that a General Motors technician experienced the same issue when he test drove her car afterwards. She relayed that he told her that the cause of the problem was the detent plunger failing to stay in position. She wrote that this was a "serious safety problem" and that she was thinking that there needed to be a "big recall." These complaints became more frequent and obvious to General Motors as time went on. General Motors began receiving crash reports, conducting internal investigations, and having internal discussions about the design, strength, and placement of these ignition switches and developed significant information that these switches were inadvertently turning vehicles off, disabling their airbags, and causing serious, even fatal, injuries.

15. Given its knowledge, General Motors had enough time to address the issue before manufacturing, assembling, distributing, and selling Mr. McGeeney's 2008 Pontiac Grand Prix. It could have redesigned the ignition switches to make them safe. It could have designed entirely new, safer alternative switches. It could have used safer

ignition switches from other model lines. It could have purchased safer alternative switches from outside sources. Or, at the very least, it could have warned its customers and the public of the danger caused by these defective switches.

16. Despite its knowledge of the danger and the alternatives available to it, General Motors made a conscious and calculated decision not to do any of these things. It also made a calculated decision not to initiate a recall, start a campaign to repair or replace the ignition switches, or to even warn customers that their ignition switches were defective or unreasonably dangerous and put them at risk of serious bodily injury or harm. Each of these alternatives would have meant acknowledging that there were millions of defective ignition switches in cars throughout the United States and the world and General Motors wanted to avoid negative publicity and invite claims.

17. The ignition switch at issue in this case was defective and unreasonably dangerous when it was first installed in Mr.McGeeney's 2008 Pontiac Grand Prix and remained in the same condition, without being altered or changed in any way, until the crash complained of below.

18. On June 29, 2013, Mr. McGeeney was driving his 2008 Pontiac Grand Prix northbound on North Point Road in Baltimore County when he had to brake to avoid a car that had stopped abruptly in front of him.

19. As Mr. McGeeney's Grand Prix slowed down, the ignition switch inadvertently moved out of the "run" position, turned his engine vehicle off, and disabled his airbags.

20. After his engine was inadvertently turned off and his airbags were disabled, Mr. McGeeney's vehicle was struck from behind by another vehicle and pushed into the vehicle stopped in front of him.

21. The force of the impact between Mr. McGeeney's vehicle and the vehicle in front of him should have caused Mr. McGeeney's airbags to deploy.

22. If Mr. McGeeney's airbags had deployed, his head would have been cushioned and his head, neck, and back would have been supported and protected and he would not have suffered any permanent injury or impairment.

23. Because of the defective and unreasonably dangerous ignition switch, however, the airbags did not deploy and Mr. McGeeney's head, neck, and back were forced through an abnormal and violent range of motion, causing him to suffer serious, permanent, and disabling injury.

24. Within a year of Mr. McGeeney's crash and injuries, General Motors sent Mr. McGeeney and hundreds of thousands of other car owners a recall notice stating that their vehicles were being recalled because their ignition switches may move out of the "run" position, resulting in a partial loss of electrical power and turning off the engine. General Motors warned that if the ignition switch was not in the run position and the vehicle was involved in a crash, the air bags may not deploy, increasing the risk of injury or fatality.

25. Before receiving the recall notice, Mr. McGeeney had no reason to believe that the ignition switch in his car had been defective or unreasonably dangerous or that it had caused his airbags not to deploy.

## Count 1: Strict Liability

26. Plaintiff, Joseph McGeeney, hereby adopts and incorporates by reference paragraphs 1 through 25 as though fully set forth herein.

27. At all times relevant to this cause of action, Defendant, General Motors, LLC, was in the business of designing, manufacturing, assembling, distributing, marketing, and selling vehicles.

28. At all times relevant to this cause of action, General Motors knew or should have known that Mr. McGeeney was not in a position to discover that the ignition switch in his 2008 Pontiac Grand Prix was defective or unreasonably dangerous until he was involved in a potentially serious or injury producing crash.

29. When General Motors designed, manufactured, distributed, marketed, and sold the 2008 Pontiac Grand Prix at issue in this case to Mr. McGeeney, it was in a defective, unreasonably dangerous, and unsafe condition for the following reasons:

   a. it was designed and manufactured in a manner that allowed it to inadvertently switch out of the "run" position during foreseeable driving conditions;

   b. it was designed and manufactured with a switch detent plunger that was too short, flimsy, and weak to resist the torsional forces applied to the ignition switch during foreseeable driving conditions;

   c. it was designed and manufactured with a switch detent plunger that did not meet General Motors' own internal specifications;

   d. it was designed and manufactured with springs that were insufficiently tight and strong to resist the torsional forces applied to the ignition switch during foreseeable driving conditions;

   e. it was designed and manufactured with springs that did not meet General Motors' own internal specifications;

f. it was improperly and inadequately tested to ensure that it could resist the torsional forces applied to the ignition switch during foreseeable driving conditions;

g. it was designed and manufactured in a location that was inappropriate and caused it to fail during foreseeable driving conditions;

h. it was designed and manufactured in a way that allowed it to move out of the "run" position, resulting in a partial loss of electrical power and turning off the engine and disabling the airbags;

i. its seatbelts, seatbelt retractors, seatbelt pretensioners, and other safety devices provided inadequate protection in crash events without airbag deployments which increased the risk of serious injury and death;

j. it was marketed and sold with assurances about safety that did not accurately reflect and describe the vehicle as designed and manufactured; and

k. was otherwise defective and unreasonably dangerous.

30. The 2008 Pontiac Grand Prix at issue in this case was sold and placed into the stream of commerce by General Motors and reached Mr. McGeeney without substantial change in its design or structure.

31. As a direct and proximate result of the design, manufacturing, and marketing defects described above, Plaintiff, Joseph McGeeney, suffered physical injuries to his head, neck, back and body, and has and is expected to continue to suffer for the remainder of his life from serious, painful, permanent, and disabling bodily injury, physical pain, mental and emotional anguish, emotional trauma, disfigurement, humiliation, inconvenience, physical impairment, and other related injuries. Additionally, Mr. McGeeney has suffered and is expected to continue to suffer significant economic

damages including, but not limited to, medical and other expenses, lost wages, lost earnings capacity, and other related harms.

WHEREFORE, Plaintiff, Joseph McGeeney, claims damages against Defendant, General Motors, LLC, in an amount in excess of the jurisdictional limit of $75,000 (Seventy Five-Thousand Dollars), plus interest and costs.

## Count 2: Negligence

32. Plaintiff, Joseph McGeeney, hereby adopts and incorporates by reference paragraphs 1 through 25 as though fully set forth herein.

33. At all times relevant to this cause of action, Defendant, General Motors, LLC, was in the business of designing, manufacturing, assembling, distributing, marketing, and selling vehicles.

34. At all times relevant to this cause of action, General Motors held its vehicles, including the 2008 Pontiac Grand Prix at issue in this case, out to Mr. McGeeney and the public as a safe, well-designed, and well-manufactured passenger vehicles that were free from defects and fit for their intended and foreseeable uses.

35. Unfortunately, General Motors failed to provide vehicles, including the 2008 Pontiac Grand Prix at issue in this case, in a safe, well-designed, and well-manufactured condition that was free from defects and fit for its intended and foreseeable uses.

36. As designed, manufactured, marketed, and sold, the 2008 Pontiac Grand Prix was unsafe, defective, and unreasonably dangerous.

37. General Motors, directly and by and through its agents, servants, and employees, acted in a careless and negligent manner in that they designed, manufactured, marketed, and sold the 2008 Pontiac Grand Prix at issue in this case in a defective, unreasonably dangerous, and unsafe condition. Specifically, it was:

   a. improperly and negligently designed and manufactured in a manner that allowed it to inadvertently switch out of the "run" position during foreseeable driving conditions;

   b. improperly and negligently designed and manufactured with a switch detent plunger that was too short, flimsy, and weak to resist the torsional forces applied to the ignition switch during foreseeable driving conditions;

   c. improperly and negligently designed and manufactured with a switch detent plunger that did not meet General Motors' own internal specifications;

   d. improperly and negligently designed and manufactured with springs that were insufficiently tight and strong to resist the torsional forces applied to the ignition switch during foreseeable driving conditions;

   e. improperly and negligently designed and manufactured with springs that did not meet General Motors' own internal specifications;

   f. improperly and inadequately tested to ensure that it could resist the torsional forces applied to the ignition switch during foreseeable driving conditions;

   g. improperly and negligently designed and manufactured in a location that was inappropriate and caused it to fail during foreseeable driving conditions;

   h. improperly and negligently designed and manufactured in a way that allowed it to move out of the "run" position, resulting in a partial loss of electrical power and turning off the engine and disabling the airbags;

   i. improperly and negligently designed and manufactured with seatbelts that provided inadequate protection in crash events without airbag deployments which increased the risk of serious injury and death;

j. improperly and negligently marketed and sold with assurances about safety that did not accurately reflect and describe the vehicle as designed and manufactured; and

k. was otherwise careless and negligent.

38. The 2008 Pontiac Grand Prix at issue in this case was sold and placed into the stream of commerce by General Motors and reached Mr. McGeeney without substantial change in its design or structure.

39. As a direct and proximate result of the negligent design, manufacturing, and marketing of the 2008 Pontiac Grand Prix at issue in this case, Plaintiff, Joseph McGeeney, suffered physical injuries to his head, neck, back and body, and has and is expected to continue to suffer for the remainder of his life from serious, painful, permanent, and disabling bodily injury, physical pain, mental and emotional anguish, emotional trauma, disfigurement, humiliation, inconvenience, physical impairment, and other related injuries. Additionally, Mr. Devereaux has suffered and is expected to continue to suffer significant economic damages including, but not limited to, medical and other expenses, lost wages, lost earnings capacity, and other related harms.

WHEREFORE, Plaintiff, Joseph McGeeney, claims damages against Defendant, General Motors, LLC, in an amount in excess of the jurisdictional limit of $75,000 (Seventy Five-Thousand Dollars), plus interest and costs.

Respectfully submitted,

_____
Joseph McGeeney
Pro Se Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOSEPH MCGEENEY<br><br>Plaintiff<br><br>v.<br><br>GENERAL MOTORS, LLC<br><br>Defendant | Civil Case No. _____ |

## DEMAND FOR JURY TRIAL

Plaintiff, Joseph McGeeney, acting on his own behalf as a pro se litigant, hereby demands a jury trial on all claims and counts made.

Respectfully submitted,

_____
Joseph McGeeney
Pro Se Plaintiff